IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MATTHEW JOHNSON,                     )
                                     )
                  Plaintiff,         )
                                     )
vs.                                  )        Case No.   12-cv-1038-SCW
                                     )
ALFONSO DAVID,                       )
                                     )
                  Defendants.        )


<u>MEMORANDUM AND ORDER</u>

**WILLIAMS, Magistrate Judge:**

## INTRODUCTION

Plaintiff filed his amended complaint on April 27, 2015 (Doc. 62) alleging a single claim of violation of the **Illinois Gender Violence Act, 740 IlCS 82/1,** *et seq* **(hereinafter "the IGVA")** against Defendant Alfonso David. This matter is before the Court on Defendant David's motion for summary judgment (Doc. 102).  Plaintiff has filed a response (Doc. 107) in opposition to the motion and Defendant has filed a reply (Doc. 108).  Based on the following, the Court **DENIES** Defendant David's motion for summary judgment.

## FACTUAL BACKGROUND

The Court notes that neither side has provided a factual background indicating the relevant facts in this case.  As such, the Court has gleaned what it deems the relevant facts from the briefs and the records in evidence.

Plaintiff attended a physical examination for his employment with IDOC on April 26, 2010 (Doc. 102-3, p. 5, 8).   Plaintiff's examination was performed by Dr. David, the medical director of the Health Care Unit (*Id*. at p. 8-9).   Plaintiff had to submit to the evaluation in order to get the job and David provided medical evaluations to determine fitness for the job (*Id*. at p. 8-9, 18).   The administrative directives for pre-employment physical examinations indicate that the examination should include, at a minimum: blood pressure, height and weight, pulse, lab urinalysis, examination of organ symptoms, a test for tuberculosis, a complete blood count, and blood chemistry (Doc. 107-5, p. 4).   The pre-employment medical examination form does not include sexually transmitted diseases on the clinical evaluation, nor does it include an examination of the genitalia (Doc. 102-10).

Plaintiff testified that he consented to the physical examination (*Id*. at p. 16).   As part of that examination, Plaintiff understood that the examination would include his genital area to determine if he had any hernias (*Id*.).   Plaintiff testified that he consented to that part of the examination (*Id*.).   He also testified that he understood that, as a part of that exam, Dr. David would be using his hands to touch Plaintiff's genitals (*Id*. at p. 19).   Plaintiff further testified that during the exam he felt like he was free to leave at any time (Doc. 102-3, p. 22).   The door was not locked (*Id*.).   There was no impediment to Plaintiff leaving the room if he chose (*Id*. at p. 22-23).   He testified that he was not restrained to the table and Dr. David could not have kept him in the room if Plaintiff chose to leave (*Id*. at p. 23).

At some point during the examination, David asked Plaintiff to pull his pants down (Doc. 102-3, p. 24).   Although Plaintiff testified that he did not know why David wanted him to do so, Plaintiff acknowledged that he understood the examination would involve a hernia check and would require David to touch his groin area (*Id*.).   Plaintiff testified that he did not have a problem pulling down his pants for a hernia check and complied with the request (*Id*. at p. 24-25).   Plaintiff testified that he was lying down during this portion of the examination and that David performed an extensive palpitation of his genitals which he repeated four or five times (*Id*. at p. 25-30).   Plaintiff testified that portion of the exam lasted two to five minutes (*Id*. at p. 33-35).   Plaintiff stated that he did not understand this examination to be part of a sexually transmitted disease evaluation or screening and he would have objected to such a test (*Id*. at p. 31).   Nor did he feel that David was checking him for a sexually transmitted disease (Doc. 107-1, p. 4).   Plaintiff testified that David did not check him for a hernia (Doc. 102-3, p. 33).   He further testified that the exam did not feel right, he had never had an exam like that before, and David never explained what he was doing (*Id*. at p. 38-39).

Dr. David testified that as part of the examination, he tells patients that he is going to examine their genitals and check for hernias (Doc. 102-11, p. 2).   David palpitates the groin area to feel for any masses (*Id*. at p. 3-4).   David also testified that he checked the penis of all potential male employees for tenderness or abnormalities, as well as for discharge (Doc. 107-8, p. 2).   David indicated that portion of the exam was related to the

job requirements as pain, or having a discharge which could indicate an infection that causes pain, could affect their ability to perform physical activities (*Id.* at p. 2).   He testified that if there was tenderness, that would mean an abnormality existed which would impact their ability to perform their jobs (*Id.*).   While David acknowledged that he could ask the potential employee if they were suffering from pain, the palpation elicits tenderness which David testified would be different than a patient saying that they are in pain (*Id.*).   David indicated that he performed this test on every pre-employment physical without exception (*Id.*).

### SUMMARY JUDGMENT STANDARD

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." ***Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted) (citing FED. R. CIV. P. 56(a)).   *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).**   The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact.   ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P.**

**56(e)(2)).**  A fact is material if it is outcome determinative under applicable law. ***Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004).**  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson*, 477 U.S. at 248.**  "A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion."  ***Albiero v. City of Kankakee*, 246 F.3d 927, 931–32 (7th Cir. 2001) (citations and quotations omitted).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant.  ***Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).**  The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. ***Id.; Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).**  Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence."  ***Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004), *abrogated on other grounds by Spiegla II*, 481 F.3d at 966 (7th Cir. 2007).  *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).**

## ANALYSIS

### A. Elements of the Illinois Gender Violence Act

Plaintiff brings his claim under the **Illinois Gender Violence Act, 740 IlCS 82/1,**

*et seq* **(hereinafter "the IGVA").**   A cause of action under this Act arises when there is a "physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery under the laws of Illinois." **740 ILCS 82/5.**  Battery can be defined as the willful touching of the person of another without that person's consent. ***Flores v. Santiago*, 986 N.E.2d 1216, 369 Ill.Dec. 580, 583 (1st Dist. 2013).**

Defendant David argues that he is entitled to summary judgment because there is no evidence that David performed the exam without consent, that it was done in a sexual manner, or that the exam was completed under coercive conditions.   However, the Court finds that there are too many issues of material fact as to each element which prevents an award of summary judgment.

### 1. *Consent*

As to the element of consent, under Illinois law, "a total lack of consent to medical procedures [is] treated as batter[y] because [it] involve[s] an intentional unauthorized touching of the person of another." ***Gaskin v. Goldwasser*, 166 Ill.App.3d 996, 520 N.E.2d 1085, 1095 (4th Dist. 1988).**   A battery occurs when "the patient establishes a complete lack of consent to medical procedures performed, when the treatment is against the patient's will, and/or when the treatment is substantially at variance with the consent given." ***Hernandez v. Schittek*, 305 Ill.App.3d 925, 713 N.E.2d 203, 207-08 (5th Dist. 1999) (quotations and citations omitted).**   The scope of a patient's consent is critical to the analysis as a physician is protected from acts that are "substantially similar to those to which the patients consented." ***Hernandez*, 305 Ill.App.3d 925, 713 N.E.2d at**

708.

As to this element, Defendant argues that Plaintiff consented to a physical examination by Dr. David and that he knew that it would be a head to toe examination. Plaintiff testified that he knew that there would be some evaluation of his genital area to check for a hernia and consented to lowering his pants and underwear. Defendant offers the testimony of his expert, Roger Wujek, who testified the examination of the penis head and shaft were within the consent of the pre-employment physical examination (Doc. 107-3, p. 4 (noting that "touching the shaft and glans of the penis in [the manner described]…is a typical part of a thorough pre-employment physical examination"); 102-5, p. 2-4).

However, Plaintiff has presented evidence that such an examination does not fall within the general consent of a pre-employment physical and that Plaintiff, in fact, did not consent to that portion of the examination. Plaintiff has presented evidence that David's examination was substantially different than what was required for a pre-employment physical examination. While Wujek testified that such an examination was within the bounds of consent for a pre-employment physical exam, Wujek also testified that the penile portion of the examination was not a necessary part of the examination and did not relate to anything a correctional officer would be doing in his line of work (Doc. 107-7, p. 3). Further, Plaintiff's expert, Barbara Bellar, testified that while contact with the male genitalia might be appropriate depending on the purpose of the examination, such contact for the purposes of a pre-employment physical was

inappropriate (Doc. 107-4, p. 3-4).   She testified that the only contact in the vicinity of the male genitalia would be to check for a hernia, but not the genitals themselves (Doc. 107-4, p. 3).   Further, neither the administrative directives regarding physical examinations nor the pre-employment medical examination form mention an examination of the male genitalia, which Plaintiff argues shows that such an examination was not a part of a pre-employment physical and, thus, not part of Plaintiff's consent (Doc. 107-5; 102-10).   On these facts, the Court finds that there remains issues of fact as to whether the portion of David's examination related to Plaintiff's genitals were substantially different than a pre-employment physical such that it fell outside of Plaintiff's general consent.

There is also evidence that Plaintiff did not consent to such an examination. Plaintiff testified that he knew a part of the examination would involve a hernia check and that he would have to pull down his pants for that portion and Dr. David would have to touch his groin area (Doc. 102-3, p. 24-25).   However, Plaintiff testified that he only consented to the hernia portion of the exam, was not told about the genitalia exam by David before or during the examination, and would not have consented to such an examination (*Id.* at p. 24, 38-39; 107-1, p. 4).   Plaintiff further testified that although David asked if he had pain or any discharge, David did not tell him what he was doing nor did Plaintiff understand David's actions to be part of a sexually transmitted disease test (*Id.* at p. 24-25, 31, 38-39).   While David testified that he told each of the individuals what he was going to do, Plaintiff testified that David never explained the exam and just

started doing the exam once he had pulled his pants down (Docs. 107-8, p. 2; 102-3, p. 38-39).

Defendant makes much of the fact that aspects of the genitals examination were substantially similar to the hernia check that Plaintiff consented to, but there is evidence to suggest that there were substantial differences from the two tests.  David, himself, testified that the hernia test involved palpitating the groin for masses, but did not include touching the testicles (Doc. 102-11, p. 4).   However, the genitals examination that Plaintiff described, and David admitted that he performed, involved palpitating the actual shaft of the penis, as well as squeezing the head.   Plaintiff's expert testified that while there might be some moving of the testicles during a hernia examination, neither palpitating the testicles themselves or the penis was a necessary part of the exam (Doc. 102-6, p. 12-13).   The Court notes that Plaintiff testified that David never actually performed the hernia portion test, that David never palpitated his groin region during the examination (Doc. 102-3, p. 33).   Thus, there are certainly facts in the record from which a jury could find that the test David performed was substantially different from a hernia check, making Plaintiff's consent to the hernia test separate from the issue of whether he consented to the genitals examination.    Accordingly, the Court finds that there remains an issue of fact as to whether Plaintiff consented to the portion of the examination at issue in this case.

### 2. *Sexual Nature*

Defendant also argues that Plaintiff has failed to point to any evidence that

David's actions were of a sexual nature.   The parties note that the IGVA does not define what constitutes contact "of a sexual nature."   Defendant argues that there is no evidence to suggest that David derived any sort of sexual arousal from the contact, citing the fact that Plaintiff denied that David displayed various actions during the exam would could suggest sexual arousal on David's part (Doc. 102-3, p. 37-40).   But Plaintiff points out, and the Court agrees, that there is evidence in the record that David's examination of Plaintiff's genitalia was inappropriate for the pre-employment physical. While Defendant's expert's report indicates that touching the shaft of the penis was a typical part of the pre-employment physical examination, he later testified that he was including the hernia examination as an important part of the examination (Doc. 107-3, p. 4; 107-7, p. 3).   He testified, however, that the examination of the penis shaft and glans was not a necessary part of the examination and did not relate to anything a correctional officer would be doing in his line of work (Doc. 107-7, p. 3).   David has certainly testified as to why he performed the test, to root our unacknowledged pain, but there is also evidence in the record that the exam was unnecessary and inappropriate in this context.   Thus, if the examination that David performed of Plaintiff's genitals was not necessary, as both Wujek and Bellar testified, that begs the question why David would be performing such an examination in the course of Plaintiff's physical.   Certainly, there is enough evidence from which the jury could infer that the exam was done for an inappropriate purpose, including for sexual gratification.   Plaintiff certainly testified that the exam made him feel uncomfortable.

### 3. *Coercive Conduct*

Finally, Defendant argues that he is entitled to summary judgment because Plaintiff cannot show that David coerced Plaintiff into submitting to the examination. Defendant points to Plaintiff's testimony that during the examination the door was not locked nor was he restrained in any way (Doc. 102-3, p. 22-23).   Plaintiff also testified that he felt he could leave at any time and he did not tell David to stop nor did he express feelings of discomfort during the examination (*Id.* at p. 22-23, 29-30, 35). Plaintiff, however, points to the fact that he was required to submit to the pre-employment physical examination as a step towards employment with IDOC (Doc. 107-1, p. 3).

While Defendant argues that under the administrative directives, the chief administrator of the facility, and not Dr. David who was employed by Wexford Health Systems, had the final determination as to whether an individual met the physical job requirements, there is evidence in the record that Dr. David had the power to at least recommend disqualification from potential employment (Doc. 107-5).   The directives require that all prospective employees submit to a physical examination, which is to be conducted at the assigned facility by the facility's medical examiner (Doc. 107-5, p. 2). The directives also indicate that "the medical examiner shall make a recommendation regarding a prospective employee's physical ability to perform the essential functions of the assigned position" (Doc. 107-5, p. 3).   That decision is then forwarded to the chief administrator officer.   Employment could then be denied based on the findings of the

examination (*Id.*).

Here, Dr. David, as the assigned medical examiner to perform the pre-employment physical, did have authority to make a recommendation to the chief administrative officer as to whether Plaintiff could perform in his position.   While the directives do indicate that the chief administrator has the final decision making power, Dr. David, as Plaintiff suggests, had some power in that process as he could either recommend that Plaintiff could perform the essential functions of his job or he could recommend that Plaintiff was unable to perform the functions of his job (Doc. 107-5, p. 3).   A jury could find that this relationship had a coercive effect on Plaintiff as he was required to submit to the examination and could be disqualified from a job with the facility based on Dr. David's findings.   As such, the Court finds that issues of fact remain as to whether Dr. David's actions were conducted under coercive conditions.

### B.  Statute of Limitations

In addition to his merits argument, Defendant David also argues that Plaintiff's complaint is barred by the statute of limitations.   The statute of limitations under the IGVA is seven years, and Plaintiff filed his original complaint on August 23, 2012, well within the time limits of the IGVA.   **740 ILCS 82/20.**   Defendant, however, argues that Plaintiff's claim should not be subject to the seven year statute of limitations found in the IGVA but rather under the two-year statute of limitations for claims arising out of patient care.   *See* **735 ILCS 5/13-212.**   Defendant argues that Plaintiff should be subject to the two year statute of limitation because his claim, stemming from his

pre-employment physical examination, arose out of patient care.   District Judge Herndon previously rejected this argument twice, finding that the IGVA's statute of limitations applied to Plaintiff's claims (Doc. 26, p. 5; Doc. 32, p. 4).   Defendant's motion for summary judgment attempts to re-raise arguments previously denied by Judge Herndon.   The Court agrees with Judge Herndon's analysis of the statute of limitations issue.   The Court finds that Plaintiff's allegations of sexual battery due not arise out of patient care as sexual battery is not incidental to his medical care.   *See Kaufman v. Schroeder*, **241 Ill.2d 194, 946 N.E.2d 345, 349 (Ill. 2011) (Finding that alleged actions did not arise out of patient care when the harm alleged arose out of sexual assault rather than medical treatment received).**   Nor was Plaintiff a patient of Defendant at the time the alleged sexual battery took place, but rather was an employee who was receiving a mandated pre-employment physical examination (Doc. 32, p. 4). Accordingly, the Court **DENIES** Defendant's motion for summary judgment as to his statute of limitations argument.

### Conclusion

Accordingly, the Court **DENIES** Alfonso David's motion for summary judgment.

**IT IS SO ORDERED**.
DATED: March 23, 2017.

                                        */s/ Stephen C. Williams*
                                        STEPHEN C. WILLIAMS
                                        United States Magistrate Judge